## THE BOXLEAF.

## THE MEARIM.

### (District Court, E. D. Virginia.   May 24, 1919.)

1. **Collision** ⚌71 (3) —**Vessel dragging anchor held solely at fault for two collisions with another anchored vessel.**

    A sailing vessel, which anchored with only one anchor within two ship's lengths of a steamship already at anchor, and which dragged her anchor, *held* solely at fault, not only for the first collision with the steamship, but for a second collision after she had paid out chain until 200 feet astern of the steamship, notwithstanding her claim that the second collision was caused by the steamship dragging her anchor.

2. **Collision** ⚌69—**Last vessel to anchor must maintain safe anchorage for predecessors.**

    The last vessel to anchor must give and maintain a safe anchorage to vessels already anchored.

In Admiralty.   Libel by one Cook, master of the steamship Boxleaf, against the sailing ship Mearim, in which a cross-libel was filed.   Decree rendered for libelant.

Hughes, Vandeventer & Eggleston, of Norfolk, Va., for the Boxleaf.

Hughes, Little & Seawell, of Norfolk, Va., for the Mearim.

WADDILL, District Judge.   The libel in this case was filed by the master of the steamship Boxleaf to recover damages sustained in a collision with the sailing ship Mearim, caused by the dragging of the anchor of the last-named vessel, about 5 o'clock on Tuesday morning, June 26, 1918, in the waters of Hampton Roads, between Old Point and Newport News, in the anchorage off Sewells Point, designated as "Anchorage C."

The Boxleaf, a large British government steamship, 450 feet long, 58 feet beam, 37 feet draft, with a crew of 14 officers and 52 men, was anchored on Sunday, June 24th, or shortly theretofore, by a Virginia pilot, and on Monday afternoon, June 25th, at 8:15 p. m., the Mearim, a Brazilian government sailing ship 300 feet long, 40 feet beam, and 22 feet depth, with a crew of 41 men, was also anchored by a Virginia pilot in the vicinity of and about two ship's lengths away from the Boxleaf.   The latter was heavily laden, and the Mearim light save for some 900 tons of bunker coal.   The wind from 8 o'clock at night of the 25th until about 4 o'clock in the morning of the 26th blew from the southeast at a velocity varying from 18 to 37 miles an hour. The tide was ebb until 11 o'clock on Monday night, and flood from 11 until 5 o'clock Tuesday morning.   The Mearim had out only her port anchor on 45 fathoms of chain, and about 2 o'clock on the morning of the 26th, she dragged into the Boxleaf, striking her on the port side slightly abaft of her port bow, causing some, though not serious, damage.   The Mearim then paid out additional anchor chain, until she had paid out her whole cable of 120 fathoms.   She drifted down along the port side to the rear of the Boxleaf, where she fetched up, as she in-

sists 180 to 200 feet astern of the latter vessel, whereas the Boxleaf maintains that the Mearim's stem was only a short distance from her stern; her anchor chain having become entangled with the Boxleaf's steering gear, and wrapped round her propeller blades.

About 4 o'clock on the morning of the 26th a second collision occurred between the two ships, which caused serious damage to the Boxleaf by the Mearim coming into the starboard quarter of the Boxleaf. It is out of this latter collision that the contest here chiefly arises; the Boxleaf claiming it to have been due solely to the continued dragging of the Mearim, and her anchor becoming entangled in the Boxleaf's steering gear as aforesaid, whereas the Mearim contends that the Boxleaf is solely at fault for the second disaster, because of having dragged her own anchor after the Mearim had fetched up within 180 to 200 feet of her stern.

[1] The case turns upon which of the contentions is correct, and involves simply the question of fact. A large number of witnesses from the vessels were examined, the number and intelligence of many of them strongly preponderating in favor of the Boxleaf, and the conclusion of the court, after most mature consideration of all the evidence adduced, is that the Boxleaf's contention is the correct one, and that the Mearim is solely responsible for both collisions; that is, the second as well as the first one, which she admits was brought about by her. She was clearly liable for the first for anchoring a ship of her size and light in a crowded harbor on only 45 fathoms of chain.

[2] The Mearim was the burdened vessel, charged with giving and maintaining a safe anchorage to the Boxleaf, which had anchored ahead of her on the previous day. The distance allowed, of two ship's lengths at most, was as little space as should have been given with a view to safety. A single anchor on a chain of 45 fathoms was calculated to bring about the very result that happened, namely, set the ship adrift in a reasonably high wind, bringing about the first collision, and continuing to drag until she fetched up on her full anchor chain of 120 fathoms. Had she dropped her second anchor, or placed her port anchor on a longer chain, doubtless no collision would have happened; but, when once adrift, she continued to drag astern until she fetched up on her full anchor chain. During the dragging, putting out the second anchor might have saved the situation; but this precaution was not adopted, and upon her own showing she should not have remained, if astern of the Boxleaf, as she insists, from the time of the first until the second collision, a distance of only from 180 to 200 feet.

As the burdened vessel, charged with maintaining, as well as giving, proper anchor space to other shipping, she should have been admonished of the danger of the situation, and remedied it within the time thus at her disposal. Just precisely how the second collison was brought about is difficult to determine from the manner in which it occurred, the vessels coming together as they did; but the details are immaterial, since they did collide.

The court is convinced that the same was not caused in any manner by the Boxleaf's dragging into the Mearim, and that she did not drag at all. There was nothing in the condition of the weather or

wind that would have caused her to drag. She was a very large ship, heavily laden, and safely held with two anchors out; and the velocity of the wind, at and about the time of the occurrence, of from 18 to 37 miles an hour, would in no manner have disturbed her position; whereas the Mearim had confessedly dragged, was on an insufficient anchor chain, and, in the opinion of the court, became entangled in the steering gear of and was brought into collision with the Boxleaf, following her original fault, and drifting.

It follows, from what has been said, that the Mearim is solely in fault for the collisions, and the court will enter the proper decree so ascertaining.