## THE BACCHUS.

## THE BRAEMAR.

(District Court, E. D. Virginia. July 19, 1920.)

No. 2305.

Collision ⬤═72 (1)—Mutual faults of anchored vessels.

A collision at night between a steamship and bark anchored in Elizabeth river *held* due to faults of both vessels; the bark being primarily in fault for allowing her anchor to drag, and the steamship for failing to take measures to prevent the collision, when the danger became apparent, some three hours before it occurred.

In Admiralty. Suit for collision by one Van de Moer, Master of the steamship Bacchus, against the Norwegian bark Braemar, Arkties Braemar (K. Knudson) owner and claimant, with cross-libel. Decree dividing damages.

Hughes, Little & Seawell, of Norfolk, Va., for the Bacchus.
Hughes, Vandeventer & Eggleston, of Norfolk, Va., for the Braemar.

WADDILL, District Judge. The collision, the subject of this litigation, occurred in the waters of the Elizabeth river, in Virginia, about 6 o'clock on the morning of March 13, 1918; the vessels at the time being anchored in the regular anchorage ground to the westward and about a mile and a quarter off Sewell's Point. The Braemar came to anchor on the 8th of March, and the Bacchus on the evening preceding the collision. The Bacchus is a Dutch steel steamship, about 300 feet long, 40 feet beam, and the Braemar a Norwegian square-rigged bark, of steel construction, 300 feet long and 36 feet beam. Both vessels were loaded with coal, and each was properly manned and equipped. In the collision, the bow of the bark came in contact with the starboard quarter of the steamship, causing damage to both vessels.

Each ship insists that she was free from fault, and that the other dragged her anchor, bringing about the collision. It is exceedingly difficult to determine from the testimony precisely how the collision did occur, and what caused the same, further than that the anchor of one or the other vessel actually dragged. The conflict is sharply drawn,

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tending strongly to support the ship in whose behalf it was taken. The Bacchus, on coming to anchor the night before the collision, apparently allowed ample berth room to the bark then at anchor, and both vessels had out as much chain as appeared to be sufficient in the weather prevailing.

The testimony is undisputed that the vessels apparently moved from their positions as early as 1:30 that night, and continued to approach each other, swinging with the ebb tide, until at 4·o'clock they were within a vessel's length apart, and at about 6:30 a. m. they came together under the influence of the tide and a slight squall of wind, blowing from the southwest. The conflict in the testimony is acute on every important question, even going to the positive difference as to which ship anchored above the other in the stream, save that it is not in dispute that as early as 1:30 on the morning of the collision the vessels were getting in closer proximity to each other, and that for more than two hours prior thereto the probability of collision was patent.

The court, though with some doubt, adopts the view of the Bacchus, that the bark dragged its anchor, causing the collision. In reaching this conclusion, it is influenced by the fact that the construction of the bark, particularly with its square rig and high masts, was such that it was more likely to drag under the influence of wind and tide than the Bacchus. While her anchor chain of 45 fathoms would ordinarily have proven sufficient, with the vessel loaded, to have held her where she was anchored, it failed to do so on this occasion, and she slowly dragged until the collision with the Bacchus.

This conclusion places the fault primarily upon the Braemar, but it does not follow necessarily that she ought to bear the entire loss resulting from the collision, assuming that the Bacchus may have done or omitted to do something which may also have entered into bringing about the accident. This, the court believes, under the facts and circumstances of this case, she did, and taking into account the smooth waters in which the vessels were anchored, and the then condition of the weather, there was no good reason why, during the long period of five hours that the vessels were known to be getting in closer proximity to each other, and for about three hours when they were in a ship's length of each other, the Bacchus should not have taken some step to aid in extricating herself from possible danger of collision with the sailing vessel, which was less able to control its movements than the steamship. Had the Bacchus had steam up, it would have been a simple matter to have eased up on her anchor, and moved forward or aft. The testimony is that it would only have taken some 20 minutes for her to have gotten up steam. Spencer on Marine Collisions, 201; The Ciudad de Reus, 185 Fed.·391, 107 C. C. A. 447.

The court is somewhat influenced in reaching its decision by the failure of the Bacchus to call the state pilot who located her anchorage place the evening prior to the collision. The question of the exact location of the vessels in the stream was a most material one, and the pilot, a person experienced in matters of navigation, and particularly in the waters in question, would have been able to tell almost with certainty, from the shore bearings, whether the Bacchus had dragged

anchor, as claimed by the Braemar, or remained where he had anchored her. The Georgetown (D. C.) 135 Fed. 854; The Irishman (D. C.) 259 Fed. 301.

Counsel for the Bacchus cite and rely upon the case of the Boxleaf, 265 Fed. 803, decided by this court on the 24th day of May, 1919, to sustain their contention that the steamer was not called upon to take any step to avoid the collision. A careful consideration of that case will show that the facts were·so different from those here that it does not materially militate against anything herein said.

The court's conclusion upon the whole case is that the collision was brought about as a result of the joint fault of the two vessels, and that the damages resulting therefrom should be divided between them.